IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE ZOHAR III, CORP., <br><br> Debtor. | Chapter 11 <br> Bankr. Case No. 18-10512 (KBO) |
| DAVID DUNN, as Litigation Trustee for Zohar Litigation Trust-A, <br><br> Plaintiff, <br><br> v. <br><br> PATRIARCH PARTNERS, LLC, et al., <br><br> Defendants. | C.A. No. 23-913 (MN) <br><br><br><br><br><br><br> Adv. Proc. No. 20-50534 (KBO) |
| PARTNERS AGENCY SERVICES, LLC, et al., <br><br> Counterclaimants, <br><br> v. <br><br> ZOHAR CDO 2003-1, et al., <br><br> Counterclaim Defendants. | |
| DAVID DUNN, as Litigation Trustee for Zohar Litigation Trust-A, <br><br> Plaintiff, <br><br> v. <br><br> LYNN TILTON, et al., <br><br> Defendants. | Adv. Proc. No. 20-50776 (KBO) |

**MEMORANDUM ORDER**

Before the Court is the motion (D.I. 1, 2) ("the Motion") of Patriarch Partners, LLC, Patriarch Partners VIII, LLC, Patriarch Partners XIV, LLC, Patriarch Partners XV, LLC, Phoenix VIII, LLC, Octaluna LLC, Octaluna II LLC, Octaluna III LLC, Ark II CLO 2001-1, Limited, Ark Investment

Partners II, LP, Ark Angels VIII, LLC, Patriarch Partners Management Group, LLC, Patriarch Partners Agency Services, LLC, LD Investments, LLC, Zohar Holding, LLC, and Lynn Tilton (collectively, "Defendants"), defendants and counterclaimants in the above-captioned consolidated adversary proceedings currently pending in Bankruptcy Court, seeking an order withdrawing reference of those adversary proceedings for cause pursuant to 28 U.S.C. § 157(d). For the reasons set forth herein, the Motion is denied without prejudice to Defendants' right to request withdrawal of the reference at such time as the adversary proceedings are ready for trial.

## I.  BACKGROUND

The long history of this contentious litigation is set forth in the parties' briefs. (D.I. 2 at 3-10; D.I. 5 at 2-9). As the Court writes primarily for the parties, that history is not repeated here.

### A.  The Parties

The Zohar Funds[1] are a series of funds formed in the mid-2000s by their sponsor, Lynn Tilton, to raise money through the issuance of collateralized loan obligations ("CLOs"). The Zohar Funds' assets are primarily loans to distressed private companies ("Portfolio Companies"). The Zohar Funds used the capital raised from issuing notes to their investors – approximately $2.5 billion in the aggregate – to make debt or equity investments that serve as the collateral for repayment of the secured notes. After the Zohar Funds' formation, Tilton – through her investment firm Patriarch Partners and other affiliated entities – controlled the Zohar Funds' operation.

MBIA Insurance Corp. ("MBIA") insured Zohar I's and Zohar II's obligations to their senior noteholders. Consequently, MBIA was the "Controlling Party" for Zohar I and Zohar II under the terms of their indentures. MBIA did not insure Zohar III. Zohar III's "Controlling Class" consisted

---

[1]  Capitalized terms not defined herein have the meaning ascribed to them in the Complaint filed by the Zohar Funds in the adversary proceeding captioned *Zohar CDO 2003-1, Limited, et al. v. Patriarch Partners, LLC*, Adv. No. 20-50534 (KBO), Adv. D.I. 295.

of various private investors who hold more than 50% of the aggregate outstanding amount of Zohar III's senior notes.

### B. The Chapter 11 Cases

On March 11, 2018 ("Petition Date"), Ms. Tilton caused the Zohar Funds ("Debtors") to file voluntary petitions for relief under chapter 11 the Bankruptcy Code. The bankruptcy was intended to still the litigious environment that made it difficult to sell or refinance the Portfolio Companies and repay Zohar Fund stakeholders. Unfortunately, the Debtors' chapter 11 cases were contentious from the very outset. Mediation followed and resulted in a brief standstill of litigation during a court-approved monetization process through which the parties sought to sell or refinance the Debtors' interests in the Portfolio Companies (*see* B.D.I. 1093-1) ("the Settlement").[2] A global settlement was not reached.

On August 1, 2022, the Court entered an order approving the current version of the joint plan of liquidation (B.D.I. 3467) ("the Plan"). Pursuant to the Plan, the Portfolio Company assets of Zohar II and Zohar III were transferred to newly formed entities, and the Portfolio Company assets of Zohar I were transferred to MBIA, each of which was responsible for completing the monetization process. A trust ("the Litigation Trust") was created to hold and recover on the litigation assets, which include cases and causes of action.

### C. The Consolidated Action

The Zohar Funds sued Ms. Tilton and her affiliated entities on March 9, 2020. *See Zohar CDO 2003-1, Limited, et al. v. Patriarch Partners, LLC*, Adv. No. 20-50534 (KBO), Adv. D.I. 1 ("the Zohar Funds Adversary Proceeding"). On July 30, 2020, MBIA filed its own complaint against Ms. Tilton and her affiliated entities. *See Zohar Litigation Trust-A v. Lynn Tilton, et al.*, Adv. No.

---

[2] The docket of the chapter 11 cases, captioned *In re Zohar III, Corp.*, Case No. 18-10512 (KBO), is cited herein as "B.D.I. \_\_."

20-50776 (KBO), Adv. D.I. 1 ("the MBIA Adversary Proceeding").  On September 12, 2022, the Bankruptcy Court granted the Litigation Trust's motion to substitute the Litigation Trust as plaintiff in the MBIA Complaint ("Plaintiff"), and to consolidate the Zohar Funds Adversary Proceeding and the MBIA Adversary Proceeding.  (*See* Adv. No. 50776 (KBO), Adv. D.I. 112, 113).

### D. Current Status of the Consolidated Adversary Proceedings

Just a snapshot of the docket over the past two months reflects that the consolidated adversary proceedings remain in discovery (Adv. D.I. 561, 564), with multiple contested requests for relief pending before the Bankruptcy Court, including contested motions to compel discovery by the Litigation Trust (Adv. D.I. 523, 529) and by the Patriarch affiliates (Adv. D.I. 533, 536), including their motion for protective order (Adv. D.I. 526).  The docket also reflects that the scope of discovery may include nine other cases pending in this and other jurisdictions.  (*See* Adv. D.I. 543 at 4).  The Fifth Amended Scheduling Order, which was entered on February 12, 2024 (Adv. D.I. 543), provides that fact discovery will not be completed until October 15, 2024; that expert reports will be provided by February 18, 2025; and that remaining discovery, including expert depositions, is expected to conclude on April 14, 2025.  (*Id*. ¶¶ 5-7).  Briefing on dispositive motions will not be complete until September 15, 2025.  (*Id*. ¶ 8).  Additionally, the parties have stipulated and agreed that any party to the adversary proceedings may seek to withdraw the reference upon the Bankruptcy Court's ruling on the dispositive motions and for thirty days thereafter, and that the Litigation Trustee agrees that it will not oppose such a motion made within that time period.  (*Id*. ¶ 9).

Briefing on the Motion is complete.  (D.I. 1, 2, 5, 6).  The Court did not hear oral argument because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

## II. JURISDICTION AND STANDARDS OF REVIEW

This Court has original jurisdiction over all bankruptcy cases and proceedings thereunder, 28 U.S.C. § 1334(a)-(b), and the discretion to refer bankruptcy proceedings to the district's bankruptcy courts under 28 U.S.C. § 157(a). *In re IMMC Corp.*, 909 F.3d 589, 595 (3d Cir. 2018). Under the February 29, 2012 Amended Standing Order of Reference, this Court referred "any or all cases under Title 11 and any or all proceedings arising under Title 11 or arising in or related to a case under Title 11" to the bankruptcy court pursuant to § 157(a). "The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d). The "cause" requirement in § 157(d) "creates a presumption that Congress intended to have bankruptcy proceedings adjudicated in [the] bankruptcy court, unless rebutted by a contravening policy." *In re Am. Classic Voyages Co.*, 337 B.R. 509, 511 (D. Del. 2006). Accordingly, "cause to withdraw the reference [is] present in only a narrow set of circumstances." *In re LTC Holdings, Inc.*, 2019 WL 4643801, at *4 (D. Del. Sep. 24, 2019) (cleaned up). To overcome the presumption, the moving party has the burden to prove that cause exists to withdraw the reference. *See In re NDEP Corp.*, 203 B.R. 905, 907 (D. Del. 1996).

Courts in the Third Circuit consider five factors to determine whether cause exists for withdrawal. These non-exclusive "*Pruitt* factors" include: "(1) promoting uniformity of bankruptcy administration; (2) reducing forum shopping and confusion; (3) fostering economical use of debtor/creditor resources; (4) expediting the bankruptcy process; and (5) timing of the request for withdrawal." *Am. Classic Voyages Co.*, 337 B.R. at 511 (citing *In re Pruitt*, 910 F.2d 1160, 1168 (3d Cir. 1990)). While courts sometimes also consider whether the parties have requested a jury trial, "a demand for a jury trial [is] insufficient cause for discretionary withdrawal if the [withdrawal] motion is made at an early stage of the proceedings and dispositive motions may resolve the matter." *Id.* at 512. Finally, the *Pruitt* factors "are not weighed on a scale of equipoise – rather, the Defendants

must overcome a scale already heavily weighted against withdrawal." *In re Elk Petroleum, Inc.*, 2022 WL 4355285, at *4 (D. Del. Sept. 20, 2022) (cleaned up).

### III. THE PARTIES' CONTENTIONS

Defendants argue that cause exists to withdraw the reference because "the overwhelming majority of the claims to be tried in this Adversary Proceeding invoke causes of action under state law, jury trial rights, or both." (D.I. 2 at 1). Defendants further assert that "[k]eeping the Adversary Proceeding in the Bankruptcy Court risks inconsistent decisions on the same set of facts and guarantees a more cumbersome and costly path towards resolution." (*Id*). "If the reference is not withdrawn," Defendants argue, "many of the Counts will come before this Court at some stage of the proceedings anyway, but at a greater cost to the parties and the judiciary than if the reference were withdrawn and these matters were addressed together in this Court in the first place." (*Id*. at 11).

According to the Litigation Trustee, the Motion is premature, and Defendants have failed to overcome the presumption that the adversary proceedings should be overseen by the Bankruptcy Court. (*See* D.I. 5 at 10). "Neither the existence of non-core claims nor the potential that some Defendants may have a right to trial by jury for certain claims are sufficient grounds to support withdrawal this early." (*Id*.). "To the contrary," the Litigation Trustee argues, "the twin aims of judicial economy and reducing forum shopping are supported by denying withdrawal and permitting the bankruptcy court to continue to administer this case at least until it is trial ready." (*Id*. at 10-11).

### IV. ANALYSIS

#### A. Considerations of Judicial Economy

It is the general practice of this Court to withdraw the reference at "such time as the matter is ready for trial." *In re 24 Hour Fitness Worldwide, Inc.*, 2022 WL 605661, at *3 (D. Del. Jan. 4, 2022). The Court follows this general practice "so that the Bankruptcy Court, which is already familiar with the parties and issues, may oversee discovery and pre-trial matters, and narrow the issues

for trial." *Id.* Indeed, this long-standing practice "has promoted judicial economy in this Court." *Id.* *See, e.g.*, *LTC Holdings, Inc.*, 2019 WL 4643801, at *5 ("[P]ermitting the Bankruptcy Court to oversee pretrial matters and withdrawing it only when it is ripe for a jury trial, promotes judicial economy and a timely resolution of this case.") (cleaned up); *In re AgFeed USA, LLC*, 565 B.R. 556, 565 (D. Del. 2016) ("[T]he Bankruptcy Court's familiarity with the underlying facts and issues is an important consideration. Duplicating those efforts at an early stage of the case may result in unnecessary expenses for the parties"); *In re EXDS, Inc.*, 2006 WL 2346419, at *2 (D. Del. July 20, 2006) (bankruptcy court "has had significant time to familiarize itself with the underlying facts of this case and the parties' ongoing discovery" and "has the necessary resources to preside over the initial stages of these proceedings in an efficient and effective manner"); *In re Circle of Yoakum, Tex.*, 2006 WL 2347710, at *2 (D. Del. June 23, 2006) (same).

Defendants assert that cause exists to withdraw the reference because (i) the vast majority of the claims are state law claims (D.I. 1-2 (listing all claims); D.I. 2 at 2, 12-14), and (ii) certain Defendants may be entitled to trial by jury as to certain claims (D.I. 2 at 14-17). As the Litigation Trustee correctly argues, however, "the mere fact that a complaint asserts non-core claims does not mandate withdrawal." *In re 24 Hour Fitness*, 2022 WL 605661, at *4 (quoting *AgFeed USA*, 565 B.R. at 564 ("Proceedings should not be withdrawn for the sole reason that they are non-core.")). Defendants counter that, because the Bankruptcy Court is limited to issuing proposed findings of fact and conclusions of law for non-core issues, which will have to be reviewed *de novo* by the district court before entry of final judgment, maintaining the reference would be inefficient. (D.I. 2 at 11-12). But as this Court has recognized, "[i]n non-core proceedings, the bankruptcy court is given the power to submit proposed findings of fact and conclusions of law to the district court. Indeed, permitting the Bankruptcy Court to oversee pretrial matters, and withdrawing it only when it is ripe for a jury trial, promotes judicial economy and a timely resolution of [a] case." *LTC Holdings*, 2019

7

WL 4643801, at *5 (cleaned up). "As other courts in this district have found, duplication of judicial effort is insufficient to demonstrate cause [to withdraw the reference] because 'Congress contemplated the district court will have the benefit of the bankruptcy judge's findings of fact and conclusions of law with respect to matters over which the bankruptcy court could not enter final judgments.'" *Elk Petroleum*, 2022 WL 4355285, at *5 (quoting *In re Princeton Alt. Income Fund, LP*, 2018 WL 4854639, at *2 (D.N.J. Oct. 14, 2018) (internal citations omitted). Thus, the presence of non-core claims is not sufficient cause to withdraw the reference.

Moreover, the purported right to a jury trial "is not itself sufficient cause for discretionary withdrawal." *24 Hour Fitness*, 2022 WL 605661, at *4 (cleaned up). "Even when a district court must ultimately preside over a trial by jury, there is no reason why the Bankruptcy Court may not preside over an adversary proceeding and adjudicate discovery disputes and motions only until such time as the case is ready for trial." *LTC Holdings,* 2019 WL 4643801, at *6; *see also In re Big V Holding Corp.*, 2002 WL 1482392, at *5 (D. Del. July 11, 2002) ("Withdrawal of the reference based on the ground that a party is entitled to a jury trial should be deferred until the case is trial ready." (cleaned up)). Courts considering withdrawal on jury-trial grounds consider "(1) whether the case is likely to reach trial; (2) whether protracted discovery with court oversight will be required; and (3) whether the bankruptcy court is familiar with the issues presented." *24 Hour Fitness*, 2022 WL 605661, at *4 (quoting *LTC Holdings*, 2019 WL 4643801, at *6). Each of these factors supports maintaining the reference:

> Where, as here, a case involves "unresolved pre-trial matters, including discovery, one can only speculate when it will proceed to trial, if at all." Fact discovery is ongoing, expert discovery has not yet commenced, and the parties are not due to file dispositive motions until [seven months later]. It is unclear whether—and, if so, when—this case will be ready to proceed to trial.

*Id.* (quoting *LTC Holdings*, 2019 WL 4643801, at *6). Here, as in *24 Hour Fitness*, fact discovery is ongoing, expert discovery has not commenced, and briefing on dispositive motions will not be

8

complete until February 2025. Moreover, the Bankruptcy Court has devoted considerable time and resources to addressing bankruptcy and pretrial matters already, which has given it a better understanding of the facts and the parties. In sum, the mere specter of a jury trial is not cause sufficient to warrant withdrawing the reference now. *See In re Am. Classic Voyages Co.*, 337 B.R. at 512 ("A District Court may consider a demand for a jury trial insufficient cause for discretionary withdrawal if the motion is made at an early stage of the proceedings and dispositive motions may resolve the matter."); *In re Big V Holding*, 2002 WL 1482392, at *5 ("It would be premature to withdraw the reference to the bankruptcy court based upon the unfixed proposition that a jury trial may occur in the future."). As such, judicial economy favors denial of the Motion.

**B.      *Pruitt* Factors**

With respect to forum shopping, Defendants argue that where, as here, the non-core counts of the complaints and counterclaims predominate, forum shopping will not be encouraged by withdrawing the reference, and will in fact be reduced by it, because the District Court will be called upon to review *de novo* those non-core counts in any event. (D.I. 2 at 17). According to the Litigation Trustee, on the other hand, "the Motion is thinly veiled forum shopping," as Defendants have only sought to withdraw the reference now—in the midst of fact discovery – "on the heels of a largely unsuccessful motion to dismiss, dismissal of the majority of Defendants' counterclaims, and several adverse rulings made just the week before Defendants filed the motion." (D.I. 5 at 14). "This criticism is facially inappropriate," Defendants reply, and mischaracterizes Defendants' motives; rather, filing the Motion is consistent with their continued assertion of jury trial rights since the outset of these adversary proceedings. (D.I. 2 at 17-18; D.I. 6 at 2).

The docket does reflect several recent rulings that were not in Defendants' favor. (*See e.g.,* Adv. D.I. 122 (upholding the majority of Plaintiffs' claims after Defendants sought dismissal of all of them); Adv. D.I. 343 (dismissing all but two of Defendants' counterclaims and striking large

9

portions of the two remaining counterclaims); B.D.I. 3788 (approving bankruptcy transaction over Defendants' objection); B.D.I. 3785 (denying Defendants' motion to assert new claims under the settlement agreement)). *See 400 Walnut Assocs., L.P. v. 4th Walnut Assocs., L.P.*, 2015 WL 390455, at *5 (E.D. Pa. Jan. 28, 2015) (where movant seeking to withdraw reference has recently experienced adverse rulings in the bankruptcy court, timing is "highly suspect"); *Cardiello v. Casale* (*In re Phillips Grp., Inc.*), 2006 U.S. Dist. LEXIS 34111, at *9 (Adv. Pro. No. 05-3051) (W.D. Pa. May 22, 2006) ("Whether ill intentioned, or not, it is likely that at least one of the reasons that plaintiff seeks to move her case to this court is to avoid the Bankruptcy Court's jurisdiction on a matter on which she has already suffered adverse rulings. However, that is not a valid reason to withdraw the reference."). Giving Defendants the benefit of the doubt, however, a consideration of the remaining *Pruitt* factors does not support cause to withdraw the reference at this time.

With respect to promoting uniformity in bankruptcy administration, Defendants argue that the adversary proceedings are "fact-intensive," and of the 49 claims and counterclaims at issue, 46 of them are claims for which the Bankruptcy Court cannot enter a final judgment. (D.I. 6 at 4-5). The Court should withdraw the reference now, otherwise "the Bankruptcy Court and this Court might reach different conclusions about these complicated facts, resulting in inconsistent decisions." (D.I. 2 at 18). But "the fact that the Bankruptcy Court can only issue proposed findings of fact and conclusions of law as to non-core matters does not undermine judicial uniformity." *24 Hour Fitness*, 2022 WL 605661, at *5 (quoting *In re Liberty State Benefits of Del., Inc.*, 2015 WL 1137591, at *3 (D. Del. Mar. 12, 2015) (cleaned up)).

In keeping with its general practice, maintaining the reference best promotes uniformity. Where, as here, "the Bankruptcy Court [has] expressly retained jurisdiction to hear and decide disputes relating to its orders in the bankruptcy proceedings," and the parties have raised questions that implicate those orders, "uniformity of bankruptcy administration is best served . . . by denying

the Motion to Withdraw." *Elk Petroleum*, 2022 WL 4355285, at *5. That is especially so here, where several claims that may be presented on summary judgment will require interpretation of the Bankruptcy Court's orders and prior acts, and ongoing disputes in discovery are inexorably linked to the Bankruptcy Court's prior decisions.

With respect to fostering economical use of debtor and creditor resources and expediting the bankruptcy process, Defendants assert that the fact that "there is still significant fact and expert discovery ahead militates in favor of granting the Motion," as denial will lead to significant duplication of effort, because it will ensure that the dozens of claims for which the bankruptcy court cannot enter a final order will be subject to duplicative review. (D.I. 6 at 5-6). "Should summary judgment be denied," Defendants argue, this Court must "eventually preside over the jury trial." *Id.* at 6 (quoting *In re NDEP Corp.*, 203 B.R. 905, 913 (D. Del. 1996)). Defendants' argument disregards that pre-trial and dispositive motions often go a long way toward narrowing the scope of the claims and issue for trial. And, as discussed above, the Bankruptcy Court, having overseen the chapter 11 cases for more than 5 years, and these adversary proceedings for more than 3 years, is best positioned to oversee pretrial matters and rule on dispositive motions in a timely manner. Indeed, the Court agrees with the Litigation Trustee that "[p]rematurely withdrawing the reference, as Defendants request, will only burden this Court with pre-trial matters equally manageable in the bankruptcy court while erasing the bankruptcy court's depth of knowledge based on years of handling these cases." (D.I. 5 at 19).

Finally, with respect to the timing of the request for withdrawal, the Court agrees that the Defendants' Motion, while timely, is premature. In a pre-trial scheduling stipulation, the parties agreed that a motion to withdraw the reference would be timely if filed "at any time on or before the date that is 30 days *after* the Court's ruling on the dispositive motions outlined [in the preceding paragraph]." (Adv. D.I. 239-1 ¶ 9) (emphasis added). Although the Trust does not dispute that

11

Defendants' motion is timely under this provision, the parties clearly contemplated that (consistent with this Court's longstanding practice) the Motion would be filed, if at all, when the case was trial ready (*i.e.*, after dispositive motions had been decided by the Bankruptcy Court).

Based on a consideration of the above factors, the Court does not find cause to grant Defendants' Motion at this time. Defendants present no contravening policy to rebut the presumption that permitting the Bankruptcy Court to oversee pretrial matters in this proceeding, and withdrawing the reference only when it is ready for a trial, will promote judicial economy and a timely resolution of this case.

### V.     CONCLUSION

THEREFORE, for the reasons set forth above, IT IS HEREBY ORDERED that the Motion (D.I. 1) is DENIED without prejudice to Defendants' right to move for withdrawal of the reference at such time as the proceeding is ready for trial. The Clerk of Court is hereby directed to close this case.

The Honorable Maryellen Noreika
United States District Judge